# 14-1714-cv

## United States Court of Appeals

*for the*

## Second Circuit

CARMEN M. SEGARRA,

*Plaintiff-Appellant,*

– v. –

THE FEDERAL RESERVE BANK OF NEW YORK, MICHAEL SILVA,
MICHAEL KOH, JOHNATHON KIM,

*Defendants-Appellees.*

_____

*On Appeal from the United States District Court
for the Southern District of New York*

## REPLY BRIEF FOR PLAINTIFF-APPELLANT

LINDA J. STENGLE, ESQ.
STENGLE LAW
Nine Lenswood Drive
Boyertown, Pennsylvania 19512
(610) 367-1604

*Attorneys for Plaintiff-Appellant
Carmen M. Segarra*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................... iii

INTRODUCTION .................................................................................... 1

REPLY ARGUMENT ............................................................................. 1

I.    GOLDMAN WAS LEGALLY BOUND TO TAKE STEPS TO
COMPLY WITH SR08-08, MAKING COMPLIANCE WITH SR08-08
A BINDING LEGAL OBLIGATION.............................................. 1

II.   PLAINTIFF'S BANK EXAMINATION ENCOMPASSED HER
REPORTS OF VIOLATIONS AND HER EXAMINATION
ACTIVITY ..................................................................................... 3

III.  THE DISTRICT COURT AND THE DEFENDANTS FAILED TO
REASONABLY INFER OTHER GROUNDS FOR INVOKING 12
USC §1831J ................................................................................... 5

       A.    If Nothing Else, Plaintiff's Reports Of Goldman's Non-
Compliance With SR08-08 Must Be Deemed To Be Reports Of
Gross Mismanagement, Invoking The Protections Of 12 U.S.C.
§1831J............................................................................. 8

       B.    Plaintiff Reported And Resisted Defendants' Abuses Of
Authority, Invoking The Protections Of 12 U.S.C. §1831J ............... 10

IV.  12 USC §1831J(A)(2) PERMITS ACTIONS TO BE BROUGHT
AGAINST INDIVIDUALS............................................................ 12

V.    PROBING A POTENTIAL DUE PROCESS VIOLATION DOES NOT
EQUATE TO BAD FAITH.............................................................. 13

VI.  JUSTICE REQUIRES PLAINTIFF BE GRANTED AN
OPPORTUNITY TO AMEND THE COMPLAINT ...................... 13

i

VII.   DEFENDANTS' RESPONSE MAKES ERRORS AND ASSERTS
       FACTS NOT IN EVIDENCE ......................................................................14

CONCLUSION ...........................................................................................................15

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

**Cases**

*Hicks v. Resolution Trust Corp.*,
    737 F.Supp. 167 (N.D. Ill. 1991)....................................................................12

*In re The Goldman Sachs Group, Inc. and Goldman Sachs Bank USA*,
    11- 112-B-HC, 11-112-B-SM (September 1, 2011)........................................1

*Lippert v. Community Bank, Inc.*,
    438 F.3d 1275 (11th Cir. 2006)......................................................................7

**Statutes and Other Authorities**

5 U.S.C. §1221(e)(1)......................................................................................7

12 U.S.C. §1831J .....................................................................................*passim*

12 U.S.C. §1844(b) ........................................................................................3

12 U.S.C. § 248 .............................................................................................3

F.R.C.P. 15 ...................................................................................................13

*Hans Kelsen, General Theory of Law and the State*....................................3

SR08-08..................................................................................................*passim*

iii

## INTRODUCTION

Plaintiff Carmen Segarra submits this reply to Defendants' Brief filed on January 13, 2015.

## REPLY ARGUMENT

I. **GOLDMAN WAS LEGALLY BOUND TO TAKE STEPS TO COMPLY WITH SR08-08, MAKING COMPLIANCE WITH SR08-08 A BINDING LEGAL OBLIGATION.**

In their discussion of SR08-08, Defendants failed to acknowledge that Goldman had been legally bound by consent order to take steps to improve compliance with SR08-08. Defendants' Brief 7-8. When Plaintiff was reporting Goldman's noncompliance with SR08-08, she was effectively disclosing, among other things, that Goldman had not adhered to its legally binding obligations to address SR08-08 under a 2011 Consent Order issued by the Federal Reserve Board of Governors.

*In re The Goldman Sachs Group, Inc. and Goldman Sachs Bank USA,* Docket No. 11- 112-B-HC, 11-112-B-SM (September 1, 2011), is a consent order issued by the Federal Reserve Board of Governors to address Goldman's "unsafe or unsound banking practices" uncovered through an review of Litton Loan Servicing LP, a company previously owned by Goldman. A232, A241. The September 2011 Consent Order was issued despite Goldman's prior sale of Litton, and Goldman entered into the Order

and consented to "compliance with each and every applicable provision of [the] Order". A243.  Goldman promised to "take affirmative action" with several upgrades of its banking practices, including a commitment to make plans to improve compliance with SR08-08.  A244.

The Order states, "The provisions of this Order shall be binding on Goldman Sachs." A272.  SR08-08 is explicitly listed twice within the Consent Order, first appearing as an aspect of an ordered "Enterprise-wide Compliance Program", and second, as part of ordered improvements to Goldman's risk management practices.  A259-A260, A266.

When Plaintiff was reporting Goldman's noncompliance with SR08-08, she was effectively reporting that Goldman had not adhered to its legally binding obligations to address SR08-08 under the Consent Order.  Contrary to Defendants' assertions, SR08-08 has legal force, particularly for Goldman, which entered into a consent order and agreed, among several other actions, to improve its compliance with SR08-08.  Defendants repeatedly attempt to evade liability under §1831J by arguing that some of the subject matter of Plaintiff's bank examination – SR08-08 - is itself not a regulation, but they neglect to mention that compliance with SR08-08 was ordered in 2011.

The presence of a consent order, through which Goldman was legally bound to improve its compliance with SR08-08, makes clear failure to comply with SR08-08, in the case of Goldman, was a legal violation, without need for further analysis of the status of SR08-08 as an independently standing rule, regulation, or law. Nonetheless, Plaintiff continues to submit that SR08-08 is published and codified under the SR indexing system (giving constructive notice to all bound by it); adopted pursuant to federal law – (i.e., Bank Holding Company Act of 1956, 12 U.S.C. §1844(b), the Federal Reserve Act, 12 U.S.C. § 248); and it is enforced by the government's coercive power, giving SR-08-08 all the characteristics of a binding legal rule. *See generally, Hans Kelsen, General Theory of Law and the State.* To the extent necessary, Plaintiff reasserts and reaffirms her arguments made before the district court by incorporation here. A217-A222.

## II.   PLAINTIFF'S BANK EXAMINATION ENCOMPASSED HER REPORTS OF VIOLATIONS AND HER EXAMINATION ACTIVITY.

The district court and Defendants, in their response, draw an inaccurate and biased inference that Plaintiff's bank examination did not encompass her evidence for her finding that Goldman had failed to comply with SR08-08 or accounts of her bank examination activities. Defendants'

Brief 1.  Defendants attempt to reduce Plaintiff's bank examination, the one for which she was fired, to a simple yes or no question about compliance with SR08-08 when it included details of Plaintiff's investigation leading up to her conclusions about compliance with SR08-08.  Bank examinations are more detailed than Defendants would lead the Court to believe.

A bank examination details support and evidence for findings of noncompliance, not merely a bald finding of noncompliance.  As alleged in her First Amended Complaint, the report at issue here would "describe Goldman's noncompliance with SR08-08" and provide the annual report of Plaintiff's examination activities.  A7.25.  The First Amended Complaint details these same bank examination activities, which led up to the filing of her bank examination, and a description of her activities were part of her bank examination report.   Plaintiff was fired because she would not change this report, and of course, because of the contents of that report.  A7.28.

Contrary to Defendants' attempts to state otherwise, Plaintiff's First Amended Complaint includes numerous reports she made of possible violations that went beyond SR08-08, assuming *arguendo* that violations of SR08-08, for Goldman, do not comprise legal violations, in and of themselves.  These reports were articulated in oral argument before the

district court and by letter, which included a highlighted version of the First Amended Complaint. A325-A373.

Plaintiff reported Goldman's misrepresentations and Defendants' efforts to obstruct her bank examination, and more. Defendants agree Plaintiff clearly articulated that she was fired both for alleging noncompliance and for refusing to change her bank examination findings. Defendants' Brief 28. When Plaintiff refused to go along with Defendants' demand to obstruct the findings of her bank examination and reported their misconduct, they fired her. A7.28.

## III. THE DISTRICT COURT AND THE DEFENDANTS FAILED TO REASONABLY INFER OTHER GROUNDS FOR INVOKING 12 USC §1831J.

While the district court properly acknowledged the protections of 12 USC §1831J can be invoked for five reasons, the district court failed to make reasonable inferences that Plaintiff had been reporting Goldman's gross mismanagement or that she had been reporting and resisting Defendants' abuses of authority. SPA15-SPA19. In support of the district court's flawed analysis of Plaintiff's Assertions of Other Protected Activities, Defendants attempt to limit Plaintiff's First Amended Complaint to a one simple allegation, that SR08-08 was the "specific and singular cause of her termination." Defendants' Brief 27. On the contrary, Plaintiff

submitted more than 100 paragraphs discussing the events leading up to her termination. A7.1-A7.33. Plaintiff explicitly articulates under Count One of her First Amended Complaint that she is asserting that her related work activities were protected conduct under 12 USC §1831J. A7.32. Through her work activity, Plaintiff made numerous disclosures and reports to the Defendants about potential violations of law, gross misconduct, and abuse of authority. A7.1-A7.33.

12 U.S.C. §1831J(a)(2) cites five types of disclosures for which bank examiner employees of Federal Reserve banks may seek protection. Bank examiner employees of Federal Reserve banks may seek protection when they "provide information to any such agency or bank or to the Attorney General regarding any possible violation of any law or regulation, gross mismanagement, a gross waste of funds, and abuse of authority, or a substantial and specific danger to public health or safety". 12 U.S.C. §1831J(a)(2).

12 U.S.C. §1831J does not require actual violations to be reported, only possible violations, and does not require the provision of information to be specific articulations of laws or regulations. It does not require the explicit phrases of "gross mismanagement" or "abuse of authority" to be

used by the bank examiner employee when providing the information.  12

U.S.C. §1831J.

*Lippert v. Community Bank, Inc.*, 438 F.3d 1275 (11th Cir. 2006)

provides a useful articulation of the differences in protection provided by 12

U.S.C. 1831J(a)(1) and 12 U.S.C. 1831J(a)(2) describing the protections for

Federal Reserve bank employers as "more expansive."

12 U.S.C. 1831J adopted the legal burdens of proof from the

Whistleblower Protection Act ("WPA"), 5 U.S.C. §1221(e)(1).   12 U.S.C.

§1831J(f).   Under this Whistleblower Protection Act, an employee must

prove that his protected disclosure was "a contributing factor" in the adverse

personnel action.   5 U.S.C. §1221(e)(1).   According to the WPA:

> The employee may demonstrate that the disclosure was a
> contributing factor in the personnel action through
> circumstantial evidence, such as evidence that-
>> (A)  the official taking the personnel action knew of the
>> disclosure;  and
>> (B)  the personnel action occurred within a period of time such
>> that a reasonable person could conclude that the disclosure
>> was a contributing factor in the personnel action.

5 U.S.C. §  1221(e)(1).

Plaintiff's First Amended Complaint adequately alleges that Plaintiff

made protected disclosures to the Defendants, that those protected

disclosures were the contributing factors to their adverse personnel action

against her, that the Defendants taking the action knew of the protected

7

disclosures, and that the adverse personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure was a contributing factor in the personnel action.  A7.1 – A7.33.

**A.    If Nothing Else, Plaintiff's Reports Of Goldman's Non-Compliance With SR08-08 Must Be Deemed To Be Reports Of Gross Mismanagement, Invoking The Protections Of 12 U.S.C. §1831J.**

Even assuming, somehow, that Plaintiff's bank examination did not encompass reports of potential violations of law, the Plaintiff's reports of Goldman's noncompliance with SR08-08 showed Goldman, within months of the Consent Order requiring it to address SR08-08, was continuing to engage in unsound and unsafe bank practices.   Included in Plaintiff's recitation are the following examples of gross misconduct disclosed to Defendants, which informed her bank examination:

- Despite the presence of the Consent Order, Goldman stated in December 2011 it had no firmwide conflict of interest policy. A7.13

- Goldman's inaccurately reported to bank examiners that its board had reviewed the Kinder Morgan transaction.  A7.14, A7.21.

- Goldman's misconduct was so alarming that Defendants were concerned it could cause a consumer run off if consumers knew

8

Goldman had no effective ways of managing conflicts of interests. A7.15

- Goldman falsely stated to third parties that it had FRBNY's approval for the Santander transaction and made similar misrepresentations about oversight of other transactions "all the time." A7.16-A7.17.

- Goldman's misconduct regarding the Kinder Morgan transaction drew harsh criticism from the Delaware Chancery Court. A7.20-A7.21.

- By March, 2012, six months after Goldman became bound by the Consent Order, the New York Fed's own Legal and Compliance risk team believed Goldman's failure to adhere to SR08-08 was so serious that Goldman's misconduct needed to be addressed and labeled as a Matter Requiring Immediate Attention MRIA and a Matter Requiring Attention. A7.22.

- Goldman's persistent failure to properly address conflicts of interest issues allowed it to avoid disciplining employees that improperly managed their own, personal financial conflicts of interests when working on transactions. A7.24.

**B.     Plaintiff Reported And Resisted Defendants' Abuses Of Authority, Invoking The Protections Of 12 U.S.C. §1831J.**

Similarly, Plaintiff's First Amended Complaint includes numerous examples of Defendants' abuse of their authority and her reports and complaints about Defendants' abuses of authority.  Anyone reading the First Amended Complaint can reasonably infer that Plaintiff is alleging her complaints about Defendants' abuses of authority led to her termination.  Count One of the First Amended Complaint states, for example:

> 155. These practices of Defendants were in violation of the Defendant's obligations to conduct bank examinations properly, a violation of which represents substantial damage to the public, which depends on the honesty and integrity of bank examiners and Federal Reserve Employees.

A7.33.

The most extreme example of Defendants abuse of authority was their decision to find that Goldman Sachs had a firmwide conflict of interest policy when Goldman itself did not believe it had a conflict of interest policy.  Compare Defendant Michael Silva's "finding" at A7.26 with Goldman's repeated statements that it had no firmwide conflict of interest policy alleged at A7.13.

Throughout the First Amended Complaint's Statement of the Facts, Plaintiff details her complaints and reports about Defendants' abuses of their

10

authority, though she did not use the words "abuse of authority." For example:

- Plaintiff reported that she resisted Defendants' abuse of authority when they tried to persuade her to change meeting minutes, and she alleged she reported Defendants attempts to change the meeting minutes. A7.15

- Plaintiff alleges she reported to her supervisor that Defendants' abuses of their authority put her in an impossible situation. A7.20.

Not only did Plaintiff allege abuses of authority, she also alleged she reported Defendant Silva's and Defendant Koh's improper behavior to her supervisor shortly after the behavior occurred. A7.28. This report alone should invoke the protection of 12 U.S.C. §1831J. Though Plaintiff did not use the magic words "abuse of authority" when she articulated the events leading up to her termination in her First Amended Complaint, one can reasonably infer that she did make at least one last report of Defendants' abuse of authority in close proximity in time to her termination when she complained about the relationship managers attempts to force her to the report of her bank examination activities. She made the report and was terminated three days later. A7.28.

**IV.    12 USC §1831J(A)(2) PERMITS ACTIONS TO BE BROUGHT AGAINST INDIVIDUALS.**

Among other cases, Defendants rely on *Hicks v. Resolution Trust Corp.,* 737 F.Supp. 167 (N.D. Ill. 1991), a case decided before Congress added language to 12 U.S.C. §1831J(a)(2) extending liability to "any person who is performing, directly or indirectly, any function or service on behalf of the Corporation" for their contention that Plaintiff cannot now assert liability against individual defendants in this matter.  12 U.S.C. §1831J(a)(2).  Because *Hicks* was decided before Congress made its changes to the statute in 1993, it is not useful here.

Defendants repeatedly ignore the language of 12 U.S.C. §1831J(a)(2) discussing persons who perform indirect functions or services on behalf of the Corporation.  Clearly, Congress expected the language of 12 U.S.C. §1831J(a)(2) to be interpreted to include persons were not employees of the FDIC, because Congress made reference to the provision of indirect services or functions.  Employees do not render indirect services or functions to their companies.  Only a non-employee could be considered to render an indirect service or function to a company.  If Congress had intended to limit liability under 12 U.S.C. §1831J(a)(2) to employees or contractors of the FDIC, it would not have made the reference to persons who render indirect services and functions on behalf of the FDIC.

12

In any event, Defendants and the district court inferred, incorrectly, that none of the Defendants rendered direct or indirect service or functions on behalf of the FDIC. Plaintiff requests the opportunity to submit evidence through discovery that Defendants do indeed render services and functions on behalf of the FDIC. In the alternative, Plaintiff asks to amend her complaint to articulate this detail about Defendants' role within the banking regulatory scheme.

## V. PROBING A POTENTIAL DUE PROCESS VIOLATION DOES NOT EQUATE TO BAD FAITH

Defendants chopped up Plaintiff's request for a more complete disclosure to make it appear to be disrespectful, when it was not. Defendants' Brief 38-39. Plaintiff affirmatively avers that her attempts to ensure that the record of the pleadings be complete for future reviewers did not constitute "bad faith." Allegations of judge shopping and bad faith are wholly inappropriate in this situation.

## VI. JUSTICE REQUIRES PLAINTIFF BE GRANTED AN OPPORTUNITY TO AMEND THE COMPLAINT

F.R.C.P. 15 states the district court should freely give leave to amend a complaint when justice so requires. Plaintiff disagrees with Defendants' assertion that another opportunity to amend the Complaint would be futile

13

and asserts that an opportunity to amend the Plaintiff's would aid in allowing the claim to be presented on its merits. Defendants' Brief 29-43. As illustrated in the foregoing discussions, Defendants' termination of Plaintiff in retaliation for her bank examination activities and findings clearly invokes the protection of 12 U.S.C. §1831J, even if Plaintiff failed to parrot specific words to articulate her claim.

Should Plaintiff be permitted to amend the First Amended Complaint, she proposes to include in her complaint additional information regarding her understanding of Defendants' services and functions rendered on behalf of the FDIC, the explicit words "gross misconduct" and "abuse of authority," and details of linkage between the Goldman Sach's Consent Order of September 2011 and SR08-08.

## VII. DEFENDANTS' RESPONSE MAKES ERRORS AND ASSERTS FACTS NOT IN EVIDENCE

In their Response, Defendants introduce both a Counter Statement of the Case and a Counter Statement of the Facts that assert facts in dispute, facts not in evidence, inferences favoring Defendants and disfavoring the Plaintiff, and characterizations that are argumentative. Because the Counter Statement of the Case and the Counter Statement of the Facts are riddled

14

with questionable information, they should be stricken in their entirety.

Defendants' Brief 5-16.

## **CONCLUSION**

Plaintiff respectfully requests the judgment of the district court be reversed. Further, the Plaintiff asks that the matter be remanded to the district court, the First Amended Complaint be deemed to be sufficient, and the parties be permitted to engage in discovery.

In the alternative, the Plaintiff asks that the matter be remanded to the district court and that she be allowed to submit an Amended Complaint for the district court's consideration.

Plaintiff respectfully requests the matter be assigned to a different district court judge on remand because of the questions and concerns raised in Plaintiff's earlier brief.

Respectfully submitted,

/s/ LINDA J. STENGLE, ESQ.
_____
LINDA J. STENGLE, ESQ.
STENGLE LAW
9 Lenswood Drive
Boyertown, Pennsylvania 19512
(610) 367-1604

*Attorney for Plaintiff-Appellant,
Carmen M. Segarra*

15

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Rule 32(a)(7)(C) of the Federal Rules of Appellate Procedure, the foregoing brief is in 14-Point Times Roman proportional font and contains  2,777 words and thus is in compliance with the type-volume limitation set forth in Rule 32(a)(8)(B) of the Federal Rules of Appellate Procedure.

Dated January 28, 2015

/s/ LINDA J. STENGLE, ESQ.
LINDA J. STENGLE, ESQ.

STATE OF NEW YORK    )                  **AFFIDAVIT OF SERVICE**
                                 )      ss.:        **BY OVERNIGHT EXPRESS**
COUNTY OF NEW YORK   )                  **MAIL**

       I,                , being duly sworn, depose and say that deponent is not a party to the action, is over 18 years of age and resides at the address shown above or at

       **On January 28, 2015**

deponent served the within Reply Brief for Plaintiff-Appellant**:**

       **upon:**

David Gross, Esq.
Thomas M. Noone, Esq.
Federal Reserve Bank of New York
33 Liberty Street
New York, NY 10045
(212) 720-2356

the address(es) designated by said attorney(s) for that purpose by depositing **1** true copy(ies) of same, enclosed in a postpaid properly addressed wrapper in a Post Office Official Overnight Express Mail Depository, under the exclusive custody and care of the United States Postal Service, within the State of New York.

This document was also submitted via the CM/ECF Case Filing System. All counsel of record in this case are registered CM/ECF users. Filing and service were performed by direction of counsel.

**Sworn to before me on January 28, 2015**

_____        _____

Robyn Cocho
Notary Public State of New Jersey
No. 2193491
Commission Expires January 8, 2017

                                       Job# 257780